UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY KYRO,

      Plaintiff,

v.                                Case No. 04-74145

GENERAL PRODUCTS CORP.,          HONORABLE AVERN COHN

      Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I.  Introduction

This is a case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA).  Plaintiff Nancy Kyro is suing defendant General Products Corporation (GPC) claiming (1) breach of contract under state law, and (2) breach of fiduciary duty under ERISA.  Kryo claims wrongful denial of medical benefits and life insurance benefits.

Before the Court is GPC's motion to dismiss.  For the reasons that follow, the motion is GRANTED and this case is DISMISSED.

### II.  Background

#### A.  Medical Benefits

Kyro's deceased spouse, Gerald Kyro, was employed by GPC as President and Chief Executive Officer.  In August of 2001, Gerald Kyro left GPC.  In advance of his leaving, on August 6, 2001, Gerald Kyro and GPC executed a Separation Agreement and Release (the Separation Agreement).  Among other things, the agreement provided

2:04-cv-74145-AC-VMM   Doc # 10   Filed 07/28/05   Pg 2 of 13   Pg ID 234

Gerald Kyro with continued health benefits "with the same or substantially equivalent medical benefits" that he was receiving from GPC under the terms of his employment agreement until February 15, 2004.  He also had an opportunity to elect COBRA[1] coverage after that date.  Both Gerald Kyro and Kyro were provided medical benefits in accordance with the Separation Agreement.  The Separation Agreement also provided:

> If Kyro should die while any amount would still be payable to him hereunder had he continued to live, all such amounts, unless otherwise provided herein, shall be paid in accordance with the terms of this Agreement to his devisee, legatee, or other designee, or if there is no such designee, to his estate.

### B.  Life Insurance

Gerald Kyro was also a beneficiary of a group life insurance policy with The Lafayette Life Insurance Company that GPC purchased for the benefit of its employees.  The policy had a death benefit of $250,000 for executive employees like Gerald Kyro.  The policy provided that in the event Kyro was no longer employed by GPC, he had the right to convert the policy to his own within 31 days.  Gerald Kyro named his wife, Kyro, as beneficiary.  Gerald Kryo did not covert the policy after leaving his employ.  However, because of what GPC says is a "clerical error," GPC continued to pay premiums on the policy following Gerald Kyro's separation.  About sixteen months after Gerald Kyro's separation from GPC, in December 2002, GPC replaced the group life policy with a

---

[1]The Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq.  In general, COBRA generally requires that group health plans sponsored by employers with 20 or more employees in the prior year offer employees and their families the opportunity for a temporary extension of health coverage (called continuation coverage) in certain instances where coverage under the plan would otherwise end.  See http://www.dol.gov/dol/topic/health-plans/cobra.htm

group policy issued by Union Central Life Insurance Company.  Like the policy with

Lafayette Life, the Union Central policy covered all employees.  GPC continued to make

premium payments under the Union Central policy on Gerald Kyro's behalf.  According

to GPC, the insurance agent through whom GPC purchased the policy with Union

Central erroneously carried over Gerald Kyro's name on the list of employees covered

under the policy.

Kryo also had another life insurance policy through his employment with GPC

issued by U.S. Financial Life Insurance Company which was purchased in March of

2001, just prior to Kyro's separation.  The U.S. Financial policy provided $500,000 of

coverage for Gerald Kyro.  About five months after his separation, on January 15, 2002,

GPC wrote to Gerald Kyro explaining that GPC was not renewing this policy, stating:

> Enclosed is the notice of premium payment due for your life insurance with U.S. Financial Life.  General Products Corporation will not renew this policy.  If you wish to continue with this coverage you should contact JFP[2] and make arrangements to have it transferred to you personally.

It is not clear whether Gerald Kyro renewed this policy.

Gerald Kryo died on July 26, 2003.  Following his death, Kyro made a claim for

the $250,000 death benefit with JFP and Union Central.  By letter dated September 16,

2003, Union Central denied Kyro's claim.  The letter states in relevant part:

> Our review of the information received indicated that the late Gerald Kyro last worked on a full-time basis on August 15, 2001 due to a Severance Agreement.  Therefore, since he was not actively at work on the policy effective date of December 1, 2002 or thereafter, we regret to advise you that no benefits are available to you under this policy.
> Any premiums paid in error for the period of December 1, 2002 to present

---

[2]JFP Benefit Management, Inc. (JFP) is GPC's agent for various insurance matters.

3

will be refunded to the premium administrator under separate cover.

You may appeal this decision.  To do so, you or your authorized representative must submit a written request for review to the Company within 60 days from the date of the letter.  In addition, you may submit written information to support your position.  You or your representative will be permitted to review pertinent claims documents in our possession, which may have a bearing on the claim.

If you appeal, our final written decision will be given within 60 days after receipt of your written request for review unless there are special circumstances which require more time for making a final decision; however in no case will the decision be made more than 120 days after we receive your written request for review.  You will be notified in the event of such delay.

Kyro attempted to appeal the decision via a letter from a lawyer faxed to Union Central on November 17, 2003.  The letter was faxed after the close of business at 5:45 p.m. and was 61 days after the September 16, 2003 denial letter.  Union Central was first aware of the letter on November 18, 2003, 2 days past the 60 day deadline.  Union Central took no further action on Kyro's claim.

### C.  This Case

On October 25, 2004, Kryo filed a two count complaint against GPC.

### 1.

In count I, Kyro seeks medical benefits under the terms of the Separation Agreement, claiming that GPC "refused to continue to provide medical benefits to [Kyro] through the end of the Medical Benefits Period, and for the first six months of COBRA coverage elected by [Kyro] following the end of the Medical Benefits Period."  Complaint at ¶ 10.  She claims to have been damaged by having to make premium payments to continue her medical benefits and any additional amounts she will have to pay for COBRA coverage.

4

2.

In count II, Kyro seeks the $250,000 death benefits under the life insurance policy, claiming a breach of fiduciary duty. Kyro says that GPC had a duty to inform Gerald Kyro that he had 30 days from his separation to convert his life insurance to an individual policy and breached this duty by failing to inform him of his conversion rights. See Complaint at ¶ 17-18. Kyro makes her claim under 29 U.S.C. § 1132(a)(3).

### III.  Legal Standard

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### IV.  Analysis

GPC says that count I claiming medical benefits should be dismissed as preempted by ERISA and count II claiming life insurance benefits should be dismissed for failure to exhaust administrative remedies; that is, Kyro did not file an appeal from Union Central's denial of benefits within 60 days. Each claim will be separately addressed.

### A.  Count I - Breach of Contract - Medical Benefits

1.

In count I, Kyro claims a breach of contract relating to the payment of medical

5

benefits which arises out of the Separation Agreement.  The issue is whether the Separation Agreement is an ERISA plan.  If so, then Kyro's breach of contract claim is preempted by ERISA.

ERISA defines an "employee welfare benefit plan" as "any plan ... established or maintained by an employer ... for the purpose of providing for its participants ... (A) benefits in the event of ... unemployment ... or (B) any benefit described in section 186(c) of this title." 29 U.S.C. § 1002(1).

The Court of Appeals for the Sixth Circuit has found that severance plans are included in the definition of 29 U.S.C. § 1002(1)(B).  See Shahid v. Ford Motor Co., 76 F.3d 1404, 1409 (6th Cir.1996).  The Supreme Court has specifically noted that "plans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans."  Massachusetts v. Morash, 490 U.S. 107, 116 (1989).  However, the Sixth Circuit has also held that "not all severance pay plans are ERISA plans.  We have looked to the nature of the plan to distinguish ERISA from non-ERISA plans."  Cassidy v. Akzo Noble Salt, Inc., 308 F.3d 613 (6th Cir. 2002). In Swinney v. General Motors Corp., 46 F.3d 512, 517 (6th Cir.1995), the Sixth Circuit stated that "[t]he hallmark of an ERISA benefit plan is that it requires 'an ongoing administrative program to meet the employer's obligation.' " (quoting Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11-12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Thus, whether the delivery of benefits creates an ongoing demand on employer "assets that create a need for financial coordination and control" is a factor.  Fort Halifax, 482 U.S. at 12, 107 S.Ct. 2211.  Another factor is the degree of discretion retained by the employer over distribution of benefits in deciding whether a severance plan is an ERISA

6

plan.  Plans in which benefits are predetermined or which involve "[s]imple or

mechanical determinations" have been found not to be ERISA plans.  <u>Sherrod v.

General Motors Corp.</u>, 33 F.3d 636, 638-39 (6th Cir.1994). However, if in order to

determine benefits the employer must "analyze each employee's particular

circumstances in light of the appropriate criteria," the severance plan is probably an

ERISA plan.  <u>Id</u>. .

     In <u>Shahid v. Ford Motor Co.</u>, 76 F.3d 1404, 1401 (6th Cir. 1996), the Sixth Circuit

held that Ford's severance pay plan is an ERISA plan since the "major features" of the

plan "include (1) substantial severance payment; (2) professional re-employment

assistance; (3) continuance of medical (excluding dental/vision) and life insurance

coverages for up to one year; and (4) retirement 'grow-in' provisions."  However, in

<u>Sherrod</u>, <u>supra</u>, the Sixth Circuit noted that one-time lump sum distribution of severance

benefits is not consistent with ERISA's definition of a welfare benefit plan.  <u>Sherrod</u>, 33

F.3d at 639.

     In <u>Cassidy</u>, <u>supra</u>, the Sixth Circuit found the severance plan to be an ERISA

plan, explaining:

> The ANSI severance plan reveals a degree of discretion, periodic
> demands on assets, and an administrative burden that ERISA's definition
> contemplates.  The original severance policy generally provided for lump
> sum payment based on the employee's tenure with ANSI, "unless an
> alternate arrangement is approved by the company."  As amended in
> 1997, some employees were permitted to choose between lump sum
> payment and a two-year salary continuation period.  If alternate
> arrangements for installment payments were approved, continuation of
> benefits had to be negotiated at the discretion of ANSI.  Although benefits
> were generally formulaic, the company president had discretion to
> approve a larger amount in some cases.  Employees with five or more
> years of service could choose between normal severance payment and a
> series of monthly payments that began at retirement age.  The employee

7

had to submit a written application in order to receive this retirement
benefit, although it is not clear whether ANSI retained discretion to deny
any application. Id.  Released employees were also permitted to extend
their medical, dental and life insurance benefits, and were entitled to
career transition services.  On the whole, this severance benefits scheme
displays a degree of administrative complexity that more closely
resembles plans which we have included in ERISA's scope.

Cassidy, 308 F.3d at 616-17 (internal citations and footnotes omitted).

2.

Here, the Separation Agreement meets the test for an ERISA plan.  The
severance benefits are paid out of GPC's funds and are payable over the course of two
years in bi-weekly installments, thus evidencing a need for ongoing administration.  As
in Cassidy, there is a provision for continuation of medical coverage.  Gerald Kyro was
also given the opportunity to continue participation in GPC's 401(K) plan.  The
Separation Agreement therefore called for more than merely GPC writing a check.
Moreover, the fact that the Severance Agreement applies only to Gerald Kyro does not
mean it cannot be an ERISA plan.  See Cvelbar v. CBI Ill, Inc., 106 F.3d 1368, 1376 (7th
Cir. 1997),. abrogated on other grounds, Int'l Union of Operating Engs. Local 150 AFL-
CIO v. Rabine, 161 F.3d 27 (7th Cir. 1998) (stating that "as long as the benefits program
meet the other requirements of an ERISA plan - namely, an ongoing administrative
scheme and reasonably ascertainable terms - the [severance] program does not fall
outside the ambit of ERISA because it covers only a single employee.")  The Severance
Agreement exhibits a degree of administrative complexity beyond merely making a one
time, lump sum severance benefit.  Thus, it is a benefit plan within the meaning of
ERISA.

Because Kryo in reality is suing to enforce her rights under an ERISA plan, her

8

claim is in the nature of a claim under § 1123(a)(1)(B) which states that "[a] civil action

may be brought--(1) by a participant or beneficiary--(B) to recover benefits due to him

under the terms of his plan [or] to enforce his rights under the terms of the plan.  Kyro's

breach of contract claim is therefore preempted by ERISA.  See Warner v. Ford Motor

Co., 46 F.3d 531, 534 (6th Cir.1995).

B.  Count II - Violation of ERISA - Life Insurance Benefits

In count II, Kyro claims a violation of ERISA under § 1132 (a)(3) which provides

that a party may institute a proceeding "(A) to enjoin any act or practice which violates

[ERISA] or the terms of the plan, or (B) to obtain other appropriate *equitable* relief (i) to

redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the

plan."  Importantly, this section does not authorize a plan participant to sue for recovery

of benefits due to him under the terms of the plan.  That is within the purview of §

1132(a)(1)(B).  This section allows a cause of action for injuries for which other

sections, including § 1132(a)(1)(B) does not provide a remedy.  See Varity, 516 U.S. at

512.  Kyro characterizes her claim as one for breach of fiduciary duty.

While the Sixth Circuit has not yet determined whether a claim for breach of

fiduciary duty as might be found under § 1132(a)(3) is subject to any exhaustion

requirements, see Hill v. Blue Cross & Blue Shield, 409 F.3d 710 (6th Cir. 2005), it has

clearly held that a claim under § 1132(a)(1)(B) is subject to exhaustion.  "The

administrative scheme of ERISA requires a participant to exhaust his or her

administrative remedies prior to commencing suit in federal court."  Miller v.

Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991).

The question is whether Kyro's claim for equitable relief under § 1132(a)(3) is, as

9

GPC says, really a re-packaged claim under § 1132(a)(1)(B) or whether it is truly a claim under § 1132(a)(3).  If it is a claim under § 1132(a)(1)(B), then Kyro may be barred by her failure to exhaust because she did not file her appeal with Union Central within 60 days.

Kryo says she does not have a claim under § 1132(a)(1)(B) because under the terms of the Lafayette Life and Central Life policies, Gerald Kyro was clearly ineligible for group life insurance after he ceased active employment with GPC.  However, because GPC continued to carry on as if Gerald Kyro was covered by paying premiums, GPC misrepresented/breached its fiduciary duty by its actions indicating that Gerald Kyro was still covered under the policy.  As a result, Gerald Kryo never exercised his right under the policy to convert it or procure alternative coverage.  Thus, says Kyro, her claim must fall under § 1132(a)(3), not § 1132(a)(1)(B).

Kyro is really claiming that GPC's conduct - in failing to inform Gerald Kyro of his conversion rights and continuing to pay the policy premiums - prevents her from collecting as a beneficiary.  The basis for her claim is really the denial of benefits, which is a claim under § 1132(a)(1)(B).  See Weiner v. Klais, 108 F.3d 86, 91 (6th Cir. 1997). The Sixth Circuit has cautioned that a plaintiff cannot get around the exhaustion requirement by simply making a claim for breach of fiduciary duty.  See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615-16 (6th Cir. 1998) ("because § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3).... To rule in [the plaintiff's] favor would simply

10

characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." citing Varity Corp. v. Howe, 516 U.S. 489, 512, 515 (1996)).  Here, Kyro is making a claim for individual benefits - life insurance - in the guise of a claim under § 1132(a)(3).

Moreover, Kyro is not seeking equitable relief, but rather the payment of the life insurance policy, a monetary benefit.  This fact also supports a finding that her claim is under § 1132(a)(1)(B), not § 1132(a)(3).  As the Sixth Circuit has stated:

> ...No matter how well founded it may be as a matter of substantive law, a claim for benefits is not cognizable under § 502(a)(3) of ERISA unless it is a claim for "equitable relief."
>
> As used in § 502(a)(3), the Supreme Court has repeatedly held, "equitable relief" refers to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." Mertens v. Hewitt Associates, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); cf. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). And "[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.*" Bowen v. Massachusetts, 487 U.S. 879, 918-19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting), as quoted with approval in Great-West, 534 U.S. at 210, 122 S.Ct. 708. "And '[m]oney damages are, of course, the classic form of *legal* relief.' " Id. (quoting Mertens, 508 U.S. at 255, 113 S.Ct. 2063).

Crosby v. Bowater Inc. Retirement Plan, 382 F.3d 587, 59 (6th Cir. 2004).  The Sixth Circuit also stated that "Section 502(a)(3) [§ 1132(a)(3)] does not authorize a plan participant to sue for recovery of benefits due to him under the terms of the plan.  That is the office of [§ 1132(a)(1)(B)]..."  Id.  Kyro is not seeking equitable relief, but rather is seeking monetary relief in the form of the proceeds of the life insurance policy of Gerald Kyro.

Construing Kyro's claim as a claim for benefits under § 1132(a)(1)(B), it is clear

11

that she failed to exhaust her administrative remedies by not appealing within 60 days.

Kyro does not address the failure to exhaust in her papers but at the hearing argued

that exhaustion would be futile.  The Court can exercise its discretion to excuse non-

exhaustion where it would be futile or the remedy inadequate  See Fallick v. Nationwide

Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998).  Allowing Kryo's claim to go forward as

under § 1132(a)(1)(B), however, would be futile.  As Kryo admits, and the life insurance

policy confirms, she is not entitled to benefits because Gerald Kyro was not an

employee of GPC at the time of his death.  While Kyro has a remedy under

§ 1132(a)(1)(B) to seek the life insurance benefits, she cannot prevail on her claim

because it is clear that Gerald Kyro was not covered by the life insurance policy at the

time of his death.  The fact that Kyro's claim ultimately fails does not mean that she was

without a remedy or that her claim must therefore be converted to a claim under §

1132(a)(3).

Even assuming that Kyro's claim was in fact a claim for breach of fiduciary duty,

she still cannot prevail.  GPC's alleged "misrepresentations" are the pay stubs for

Gerald Kyro which indicate that GPC was still paying the premium on his life insurance

policy, thereby "misleading" Kyro into believing that Gerald Kyro was still covered.

These allegations do not rise to the level to support a breach of fiduciary duty claim.  At

most, they indicate a clerical error which is insufficient to make out a breach of fiduciary

duty claim.  See Easa v. Florists' Transworld Delivery Assoc., 5 F. Supp. 2d 522, 524

(E.D. Mich. 1998) (accidentally conveying incorrect retirement benefit estimates cannot

support a breach of fiduciary duty claim because the fiduciary's conduct "must constitute

more than a 'clerical error.'")

12

As to whether Kryo has suffered any unfairness as a result of this finding where GPC erroneously continued to pay life insurance premiums for Gerald Kyro, Gerald Kyro was not without any notice of the need to verify life insurance coverage.  The Separation Agreement contains a provision regarding his right to purchase supplemental life insurance during the severance period through GPC's supplemental life insurance program, thus contemplating the purchase of supplemental coverage.  See ¶ (e) of Severance Agreement.  Gerald Kyro was also notified that coverage on another life insurance policy with U.S Financial, not at issue here, ended and that should he wish to continue coverage he would have to do so personally.  GPC error in continuing to pay premiums for an individual no longer in its employ does not give Kyro a right to a claim under ERISA under the circumstances.

SO ORDERED.


s/Avern Cohn_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 7/28/05
Detroit, Michigan


13